**In the Matter of RELIABLE DRUG STORES, INC., et al., Debtors.**

**Bindley Western Industries, Inc., Appellant.**

**No. 95–1861.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1995.

Decided Nov. 30, 1995.

James M. Carr (argued), Wendy W. Ponader, Baker & Daniels, Indianapolis, IN, for Bindley Western Industries, Incorporated.

Steven H. Ancel, Paul Deignan (argued), Ancel & Dunlap, Indianapolis, IN, for Reliable Drug Stores, Incorporated, Drug Fair, Incorporated, H.A. Woods Drug Company,

Midwest Reliable Incorporated, PDI of Indiana, Incorporated, Reliable Illinois, Incorporated.

Steven H. Ancel, Ancel & Dunlap, Indianapolis, IN, for Reliable of Kansas, Incorporated.

Alan Kornberg, Andrew N. Rosenberg, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Acadia Partners, Limited Partnership.

Thomas C. Scherer, Bingham, Summers, Welsh & Spilman, Indianapolis, IN, Daniel M. Pelliccioni, David E. Van Iderstine, Jr. (argued), Michael J. Loesberg, Katten, Muchen, Zavis & Weitzman, Los Angeles, CA, for Bank of America National Trust and Savings Association.

Elliot D. Levin, Rubin & Levin, Indianapolis, IN, Stuart E. Hertzberg, Pepper, Hamilton & Scheetz, Detroit, MI, for Official Unsecured Creditors Committee.

Before COFFEY, FLAUM, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Shortly before Reliable Drug Stores entered bankruptcy, Bindley Western Industries sold it more than a million dollars worth of goods. Bindley did not demand payment in advance, arrange for a letter of credit, or take a purchase-money security interest under § 9–312 of the Uniform Commercial Code, which Indiana (whose law governs) has adopted as I.C. § 26–1–9–312. (For simplicity we omit the "I.C. § 26–1" prefix from other citations.) Instead Bindley depended on Reliable's history of prompt payment—a history that ended when the bankruptcy began. Bindley immediately made a demand under UCC § 2–702(2), which permits the seller to "reclaim"—that is, to retake possession of—goods delivered during the prior 10 days to an insolvent buyer. But the Bankruptcy Code qualifies the remedies available under the UCC. A bankruptcy court may deny reclamation if it "(A) grants the claim of such seller priority as a claim of a kind specified in section 503(b) of this title; or (B) secures such claim by a lien." 11 U.S.C. § 546(c)(2). Section 503 governs claims for administrative expenses, and Bankruptcy

Judge Vandivier took that route. He denied Bindley's request to repossess the goods and substituted an administrative claim, with strings:

> Bindley is hereby granted an administrative expense claim as follows: To the extent of the amount owing to Bindley by Reliable on account of Reliable's credit purchase of the [goods], and it is hereafter determined that Bindley has a valid reclamation claim under Section 546(c) of the Bankruptcy Code as to the [goods], Bindley shall hold an administrative expense claim allowable under § 503(b) of the Bankruptcy Code.

When the court entered this order, two days after the filing of the petition, everyone assumed that Reliable could pay off its secured debts and satisfy all administrative claims in full. By the time the court confirmed a plan of reorganization, however, it had become clear that Reliable could not. It owed secured creditors some $79 million; the total realizable on Reliable's assets came to about $62 million. The security included Reliable's entire inventory, which meant that it included the goods Bindley had delivered.

What happens when a reclamation claimant and a secured creditor seek to satisfy debts from the same assets? Section 2–702(3) of the UCC provides that the "seller's right to reclaim ... is subject to the rights of a buyer in ordinary course or other good faith purchaser under this Article (Section 2–403)." (Indiana's version of the UCC substitutes "IC 26–1–2–403" for "this Article (Section 2–403)"; meaning is unaffected.) Is the holder of a security interest in inventory "a buyer in ordinary course or other good faith purchaser under this Article (Section 2–403)"? Security interests come under Article 9, not "this Article (Section 2–403)." Several courts have held, or assumed, that a security interest beats a reclamation claim, on the ground that the security interest equates to the rights of a good faith purchaser under UCC § 1–201(32) and (33). See *In re Pester Refining Co.*, 964 F.2d 842, 844–45 (8th Cir. 1992); *In re Samuels & Co.*, 526 F.2d 1238 (5th Cir.1976) (en banc). Legal scholars are not so sure, observing that § 2–702(2) gives a vendor the rights of a purchase-money secu-

rity holder for 10 days, and the purchase-money lender undoubtedly beats a creditor with a security interest in after-acquired inventory. Compare Douglas G. Baird & Thomas H. Jackson, *Possession and Ownership: An Examination of the Scope of Article 9*, 35 Stan.L.Rev. 175, 206–09 (1983) (page 207 n. 91 collects many earlier articles on the subject), with Thomas A. Jackson & Ellen Ash Peters, *Quest for Uncertainty: A Proposal for Flexible Resolution of Inherent Conflicts Between Article 2 and Article 9 of the Uniform Commercial Code*, 87 Yale L.J. 907, 966–69 (1978). This thicket is one we need not enter, because Bindley concedes that a reclamation claimant stands in line after a creditor with a security interest in after-acquired inventory. One would suppose that Bindley's concession ends the case; Bindley insists that it is entitled to prevail nonetheless.

When the shortfall in Reliable's assets became clear, the bankruptcy judge concluded that Bindley did not have a "valid" reclamation claim. Then the judge confirmed a plan of reorganization over Bindley's objection. This plan sets aside about $6 million for administrative claims, including $150,000 for reclamation claimants. Under the plan Bindley receives approximately 10% of its claim, and other trade creditors get nothing. The plan has since been implemented; to avoid upsetting other provisions, the secured creditors agreed to pay from their own coffers any amount that higher courts later found owing to Bindley. Bindley observed that other administrative claimholders received more than 10¢ on the dollar and demanded equal treatment. The district judge thought that Bindley had a "valid" claim. 181 B.R. 374 (S.D.Ind.1995). The district judge went on to conclude that its administrative claim is nevertheless worthless, because it is junior to the secured creditors' claims to the same goods. (Bindley does not argue that a claim with administrative priority under § 503(b) comes ahead of a secured creditor; it assumes that the administrative claim stands no different from the reclamation claim. See 11 U.S.C. §§ 506(c), 507(a).) The district court's decision means that the 10% payment is attributable to the secured creditors' generosity rather than to any of Bindley's legal

entitlements. If the district court's approach is correct, it also moots Bindley's objections to the confirmation of the plan of reorganization. That other creditors received more than 10% on their claims (most of which are attributable to post-petition dealings with Reliable) is irrelevant if Bindley was entitled to 0% at best.

■ Chief Judge Barker correctly rejected cases, on which the bankruptcy judge had relied, rebuffing a reclamation claim just because there was *some* security interest in the goods. The validity of a reclamation claim depends on the criteria of § 2–703(2): Reliable was insolvent when Bindley delivered the goods; Bindley sought their return within 10 days; about $736,000 of the goods remained in Reliable's inventory when Bindley made this demand; Reliable therefore had a substituted administrative claim with a $736,000 nominal value. To the extent *In re Shattuc Cable Corp.*, 138 B.R. 557 (Bankr. N.D.Ill.1992), and *In re Lawrence Paperboard Corp.*, 52 B.R. 907 (Bankr.D.Mass. 1985), hold otherwise, we disapprove them. If senior secured lenders can be satisfied from the inventory, a reclamation claimant also can be satisfied from the residue. A reclamation claim is "subject to" the interests of good faith purchasers under UCC § 2–702(3) but is not extinguished by them. See *Pester Refining*, 964 F.2d at 846. The UCC may well contemplate return of the inventory to the reclamation claimant whether or not the buyer had granted a security interest; the goods would be "subject to" that interest in the sense that the vendor would have to pay off the secured party before reselling the goods to another customer (if indeed a secured creditor has the status of a good faith purchaser, a question we have avoided). We need not work out such details, because bankruptcy intervened. How much a particular reclamation claim is worth, once § 546(c)(2)(A) transmutes it into an administrative claim, is a question distinct from the "validity" of the reclamation claim. Given the finding that Reliable's creditors were undersecured, the district court had no option other than to deem Bindley's administrative claim worthless.

According to Bindley, res judicata and the law of the case prevented the district court from reaching its conclusion, however justified it may have been as a matter of first principles. The bankruptcy court awarded it an administrative priority in lieu of possession; the district court held the reclamation claim "valid"; and that, Bindley insists, is that. Yet "res judicata" (Bindley must mean issue preclusion, or collateral estoppel) applies to successive litigation; it does not prevent a superior tribunal from examining an order on direct appeal. Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 18 *Federal Practice & Procedure* § 4433 (1981). So too with "law of the case," which requires a court to respect its own decisions and the mandate of an appellate tribunal, but which never blocks a higher court from examining a decision of an inferior tribunal. *Williams v. CIR*, 1 F.3d 502 (7th Cir.1993); cf. *Rekhi v. Wildwood Industries, Inc.*, 61 F.3d 1313 (7th Cir.1995) (comparing res judicata with law of the case).

Bankruptcy law contains many doctrines that protect reliance interests generated during litigation. We explored some of these principles in *In re UNR Industries, Inc.*, 20 F.3d 766 (7th Cir.1994), and *Kham & Nate's Shoes No. 2 v. First Bank of Whiting*, 908 F.2d 1351 (7th Cir.1990). Bindley did not rely to its detriment on the bankruptcy judge's order; its shipments and extensions of credit to Reliable preceded the commencement of the bankruptcy. By the time the case got under way, the only questions were whether Bindley could reclaim the goods and, if not, how much money it would receive. The Bankruptcy Code permits the judge to substitute a lien or an administrative claim for the goods; the judge did so in this case; the question then became how much the administrative claim was worth. The original order did not settle that issue; even if it had the order would have been subject to review on appeal. The secured creditors were free to appeal the bankruptcy judge's original order—for district judges may elect to hear interlocutory appeals in bankruptcy cases, 28 U.S.C. § 158(a)(3)—but did not have to. The order was doubly contingent (both valuation and a decision about "validity" lay ahead) and therefore interlocutory; everyone safely could wait for and appeal from the final decision, in this case the order confirming the plan of reorganization. *In re Kilgus*, 811 F.2d 1112 (7th Cir.1987); cf. *Otis v. Chicago*, 29 F.3d 1159, 1166–67 (7th Cir. 1994) (en banc).

Bindley was disappointed to learn that the secured creditors owned all of Reliable's inventory, but bad breaks are common in bankruptcy. All Bindley ever possessed in this case—given its concession that it stands in line after secured debts—was a hope that the senior creditors would be generous. They turned out to be, perhaps hoping to cut their litigation costs and bring this case to a conclusion. The secured creditors' willingness to grant the reclamation creditors something does not show that the inventory "really" was worth more than the debts it secured; the bankruptcy judge found the contrary.

AFFIRMED.