In re FLOORING AMERICA, INC., et al., Debtors.

Ohio Valley Flooring, Inc., Movant,

v.

Flooring America, Inc., et al., and Morton P. Levine, Trustee, Respondents.

No. 00–68370.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Nov. 29, 2001.

Frank B. Wilensky, Todd E. Hennings, Louis G. McBryan, Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, GA, for debtor.

Barbara Ellis–Munro, Bryan P. Hall, Smith, Gambrell & Russell, Atlanta, GA, special counsel for debtor.

Richard J. Joseph, Stokes, Lazarus & Carmichael, Atlanta, GA, for movant.

Morton P. Levine, Stephen Block, Levine & Block, Atlanta, GA, for trustee.

### *ORDER*

JOYCE BIHARY, Bankruptcy Judge.

This Chapter 11 case is before the Court on a motion filed by Ohio Valley Flooring, Inc. ("Ohio Valley"), seeking an administrative expense claim under § 546(c)(2)(A). This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), and (O). After carefully considering all the parties' briefs and the stipulated facts, the Court concludes that under the facts of this case, Ohio Valley's motion must be denied.

### I. Factual Background

The facts are undisputed.[1] Debtor owned and operated one of the largest floor covering networks in North America. Debtor and twenty two affiliated entities filed for Chapter 11 bankruptcy protection on June 15, 2000.[2] The debtors will be referred to collectively in this opinion as "debtor." Debtor is a buyer of goods and Ohio Valley is a general unsecured creditor and seller of goods as provided in Ga.Code Ann. § 11–2–702. Ohio Valley sold and delivered, before and after the bankruptcy filing, floor covering goods to the debtor.

Ohio Valley made two written reclamation demands, pursuant to Ga.Code Ann. § 11–2–702 and 11 U.S.C. § 546(c), on debtor's counsel requesting the return of goods delivered to debtor entities. On June 21, 2000, Ohio Valley delivered the first written reclamation demand to debtor's counsel, demanding the return of cer-

---

1. The parties filed two sets of stipulations of fact with respect to this matter. The first set of stipulations was filed on March 1, 2001, and the parties filed a supplemental set of stipulations on September 20, 2001.

2. One of the debtors, Floor Source Distributors, Inc., filed its voluntary petition on June 12, 2000.

tain goods shipped between June 1 and June 16, 2000. On June 22, 2000, Ohio Valley sent a second written reclamation demand to debtor's counsel, demanding the return of certain goods delivered between June 2 and June 20, 2000. The letters provided as follows:

> Our client [Ohio Valley] demands its right of reclamation in the goods identified on the enclosed invoices. Pursuant to O.C.G.A. § 11–2–702 and 11 U.S.C.S. § 546(c), Ohio Valley Flooring hereby demands return of the goods as described in the enclosed invoices.

(Exhibits "A" and "B" to March 1, 2001 Stipulation of Facts).

Debtor has paid for all goods shipped after the bankruptcies were filed, and Ohio Valley's claim now concerns solely pre-petition deliveries.[3] During this pre-petition period, Ohio Valley delivered goods, which became a part of debtor's inventory, valued at $43,753.15. Debtor purchased these goods on credit and was insolvent when Ohio Valley delivered the goods. Ohio Valley did not take a security interest in any goods delivered to the debtor.

Debtor was in possession of the goods shipped by Ohio Valley when it received the written reclamation demands. On June 27, 2000, debtor's counsel responded to Ohio Valley's two reclamation demands, advising Ohio Valley that the goods would not be returned. The letter provided as follows:

> This letter will serve as notice that Foothill Capital Corporation ("Foothill") has a valid, perfected, first-priority security interest in substantially all of the assets of Flooring America, Inc. and its direct and indirect subsidiaries, including Maxim Retail Stores, Inc., CarpetMax of Indiana, 4 Floors, Inc., Cleveland, CarpetMax of Louisville, et al. As such, and pursuant to O.C.G.A. § 11–2–702(3), any right of reclamation you may have is subject to and subordinate to the interest of Foothill. *See Matter of Leeds Building Products, Inc.,* 141 B.R. 265 (Bankr.N.D.Ga.1992). Therefore, no goods will be returned in response to your request.

(Exhibit "C" to March 1, 2001 Stipulation of Facts).

The parties have stipulated that Foothill Capital Corporation ("Foothill") is a lien creditor as provided in GA.CODE ANN. § 11–2–702. The parties have also stipulated that State Street Bank and Trust Company ("State Street") is a lien creditor as provided in GA.CODE ANN. § 11–2–702, although State Street is not mentioned in the debtor's response to the reclamation demand letters. The parties agree that Foothill and State Street each hold a perfected security interest in debtor's inventory which existed prior to delivery of the goods which are the subject of Ohio Valley's reclamation motion. Ohio Valley does not challenge the validity of the security interests held by Foothill and State Street, nor does Ohio Valley challenge the good faith of these lenders. At no time has Ohio Valley been willing to purchase the claims and lien positions of Foothill or State Street.

On July 6, 2000, debtor filed a series of motions requesting Court approval to sell its inventory and other assets, including the goods sought to be reclaimed by Ohio Valley. The Court conducted hearings on debtor's motions and subsequently entered orders granting debtor's motions to sell

---

**3.** Initially, Ohio Valley's reclamation claim covered goods delivered both before and after the bankruptcy filing. In a telephonic hearing with the Court on February 8, 2001, counsel agreed that Ohio Valley was entitled to be paid for every item delivered after the date of the bankruptcy filing.

inventory and other assets. Debtor did not give Ohio Valley notice of these motions or hearings. The goods sought by Ohio Valley in its reclamation letters were sold by the debtor, and the proceeds were paid over to Foothill based upon its first priority lien position. Foothill held a properly perfected lien on the debtor's inventories, and the goods sought by Ohio Valley were part of the debtor's inventories as defined in the relevant loan documents and under Georgia law. These sales failed to generate enough money to pay all of the debt owed to Foothill, but in debtor's motion to obtain post-petition financing filed on June 16, 2000, debtor represented that Foothill was oversecured.

■ Four months after the Chapter 11 cases were filed, Ohio Valley filed the instant motion pursuant to § 546(c) of the Bankruptcy Code. Ohio Valley now seeks an administrative priority claim in the amount of $43,753.15, the value of the goods covered by the reclamation demands. Debtor does not argue that Ohio Valley has not acted diligently in asserting its reclamation claim in the bankruptcy case.[4]

In supplemental stipulations filed on September 20, 2001, the parties agree that Foothill's first priority lien has now been paid off from the sale of the debtor's as-

sets as part of an orderly liquidation and that State Street, as indenture trustee, is the sole remaining lienholder in these administratively consolidated bankruptcy cases. The parties further agree that State Street holds claims in these cases which significantly exceed the value of the debtor's remaining assets. However, the debtor, and now the Trustee in these cases, has filed an adversary proceeding seeking to avoid the security interest of State Street, as indenture trustee and to recover certain payments made to State Street and the noteholders as preferences pursuant to 11 U.S.C. §§ 547 and 550.[5]

Ohio Valley does not challenge the lien held by State Street as indenture trustee on any basis. Ohio Valley does not allege that State Street has acted in bad faith with regard to its lien or its conduct vis-a-vis other creditors of this estate, either pre-petition or post-petition. Nor does Ohio Valley allege that the Trustee or the estate has acted in bad faith vis-a-vis Ohio Valley.

## II. Legal Analysis

■ To understand the parties' arguments, it is helpful to set out the basic legal principles governing a reclamation claim. Section 546(c) of the Bankruptcy Code "provides the exclusive remedy for a seller who seeks to reclaim goods from a

---

4. There is some confusion over what steps a reclaiming seller should take to protect himself once a buyer files bankruptcy. While § 546(c) is fairly clear regarding the time requirements for making a written demand for reclamation, a seller is well advised to file a motion or an adversary proceeding in the bankruptcy court promptly asserting its rights and claims under § 546(c). It is difficult to see any advantage in waiting to assert those rights formally. If the seller merely sends a letter with the reclamation demand, the seller runs the risk that the goods will be sold or that a court might find the seller was not diligent. If the goods are sold, there is always a possibility that it will be difficult to

establish whether the goods were in the debtor's possession at the time the reclamation letter was received. This is an area in which the substantive bankruptcy law provides for a limited right under limited circumstances in § 546(c), but the law does not provide any clear procedure as to how to best exercise the right. *See McLouth Steel Prods. Corp. v. Quaker Chemical Co., et al. (In re McLouth Steel Prods. Corp.)*, 213 B.R. 978, 987 (E.D.Mich.1997).

5. The case style for the adversary proceeding is *Morton P. Levine, as Trustee, v. State Street Bank and Trust Co., et al.*, AP No. 00–6631.

debtor in bankruptcy." *Flav–O–Rich, Inc. v. Rawson Food Serv., Inc. (In re Rawson Food Serv., Inc.)*, 846 F.2d 1343, 1346 (11th Cir.1988). Section 546 of the Bankruptcy Code covers limitations on the trustee's avoiding powers, and subsection (c) provides as follows:

(c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods—

(A) before 10 days after receipt of such goods by the debtor; or

(B) if such 10–day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.

11 U.S.C. § 546(c) (1994).

█ In order to establish a reclamation right under 11 U.S.C. § 546(c), Ohio Valley must establish: (1) a statutory or common law right to reclaim the goods; (2) debtor's insolvency at the time it received the goods; (3) that Ohio Valley made a written demand for reclamation within ten (10) days after debtor's receipt of the goods; and (4) that debtor possessed the goods at the time it received the written demand. *In re Rawson Food Serv., Inc.*, 846 F.2d at 1347–48. The parties agree that the last three elements of the claim are met, but debtor argues that Ohio Valley's claim is valueless because of Foothill and State Street's claimed security interests in the goods.

█ While Section 546(c) of the Bankruptcy Code gives a seller the right to reclaim goods sold on credit to an insolvent debtor after the debtor has filed a bankruptcy petition, § 546(c) does not create a substantive right to reclamation, but only allows a seller to reclaim goods to the extent there is a statutory or common law right to do so. The statutory right to reclaim goods is found in section 2–702 of the Uniform Commercial Code, which Georgia has adopted as Ga.Code Ann. § 11-2-702. (For simplicity, the "Ga.Code Ann. 11" prefix is omitted from further citations in this opinion.) Section 2–702 provides as follows:

2–702 Seller's remedies on discovery of buyer's insolvency

(1) Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this article (Code Section 11–2–705).

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten-day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(3) *The seller's right to reclaim under subsection (2) of this Code section is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this article (Code Section 11–2–403).* Successful reclamation of goods excludes all other remedies with respect to them.

GA.CODE ANN. § 11–2–702 (2000) (Emphasis added).

To establish a reclamation right under 2–702(2), Ohio Valley must prove the following: (1) debtor received the goods on credit; (2) the goods were received while debtor was insolvent; and (3) Ohio Valley made a demand ten (10) days after receipt of the goods. Again, Ohio Valley has established these facts, but the difficulty arises because of subsection (3) of Section 2–702.

 Under Section 2–702(3), the rights of a reclaiming seller are "subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor...." GA.CODE ANN. § 11–2–702(3) (2000). A secured party with a properly perfected security interest in a debtor's inventory fits within the statutory definition of "good faith purchaser." *Stowers, et al. v. Mahon (In re Samuels & Co., Inc.),* 526 F.2d 1238 (5th Cir.1976), *cert. denied* 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *In re Leeds Bldg. Prods., Inc.,* 141 B.R. 265, 268 (Bankr.N.D.Ga.1992) (Drake J.). In *Reliable Drug Stores,* Judge Easterbrook noted that while several courts have held that a security interest prevails over a reclamation claim, on the ground that the security interest equates to the rights of a good faith purchaser under UCC § 1–201(32) and (33), "[l]egal scholars are not so sure, observing that § 2–702(2) gives a vendor the rights of a purchase-money security holder for 10 days, and the purchase-money lender undoubtedly beats a creditor with a security inter-

est in after-acquired inventory." *In re Reliable Drug Stores, Inc.,* 70 F.3d 948, 949–50 (7th Cir.1995). However, the Court in *Reliable* did not enter this "thicket", because the reclaiming creditor there conceded that a reclamation claimant stands in line after a creditor with a security interest in after-acquired inventory. Similarly, here, Ohio Valley has not argued that it is like a purchase money security holder or that Foothill or State Street are not "good faith purchasers" within the meaning of 2–702(3). Ohio Valley does not contest the validity of either Foothill or State Street's security interests, nor does Ohio Valley contest the good faith of the lenders. The parties have stipulated that Foothill and State Street are lien creditors pursuant to 2–702, and thus Ohio Valley's right of reclamation is subject to the rights of Foothill and State Street.

The question that remains is whether there is any value to Ohio Valley's right of reclamation under 2–702 of the Uniform Commercial Code and under § 546(c) of the Bankruptcy Code. The goods subject to the reclamation demand have been sold, and so the only relief available to Ohio Valley is under 11 U.S.C. § 546(c)(2)(A), which provides for an administrative expense claim under § 503(b) of the Bankruptcy Code. 11 U.S.C. § 546(c)(2)(A) (1994); *Leeds Bldg. Prods., Inc.,* 141 B.R. at 268.

 The parties' arguments have changed somewhat during the course of this case. Initially, debtor opposed Ohio Valley's request for an administrative claim, arguing that Ohio Valley had no reclamation right because the debtor had sold the goods at issue and because Ohio Valley's rights were subject to the rights of Foothill. Debtor's argument regarding its sale of the goods sought to be reclaimed by Ohio Valley has no merit. The goods that were the subject to Ohio Valley's rec-

lamation demand were in debtor's possession at the time that the reclamation letters were received. Debtor sold these goods after it received the letters, but the record demonstrates that debtor failed to provide Ohio Valley with notice of its motion to conduct the sale. Thus, if Ohio Valley had been entitled to reclaim the goods, the Court could have granted a priority claim under § 546(c)(2)(A) and, contrary to debtor's position, the fact that the goods were no longer in debtor's possession at the time Ohio Valley filed its motion should not prejudice Ohio Valley's position or give any advantage to debtor in this matter.

The facts and arguments relating to the effect of prior lienholders' rights on Ohio Valley's claim under § 546(c)(2)(A) are more complicated. In their briefs, neither party argued initially that State Street's claim had any relevance to this reclamation dispute, and the arguments related primarily to the effect of Foothill's claim on Ohio Valley's rights. Ohio Valley argued that debtor's assets would be more than sufficient to pay Foothill, and that Foothill was oversecured. In a brief filed by debtor in February of 2001, debtor claimed that Foothill's claims had not been extinguished, that the sale of the inventory had not been sufficient to pay Foothill, and that Foothill was undersecured, not oversecured. Thus, initially, it appeared that an important issue was whether Foothill was an undersecured or oversecured creditor. If Foothill was undersecured, Ohio Valley's reclamation claim would have no value absent some showing of bad faith, and the Court would not be able to grant an administrative claim under § 546(c)(2)(A). *Reliable Drug Stores, Inc.,* 70 F.3d at 950.; *Pester Ref. Co. v. Ethyl Corp. (In re Pester Ref. Co.),* 964 F.2d 842 (8th Cir.1992); *In re Leeds Bldg. Prods., Inc.,* 141 B.R. 265 (Bankr.N.D.Ga.1992). On the other hand, if Foothill was overse-

cured, perhaps the Court could grant Ohio Valley an administrative claim. In *Reliable Drug Stores,* the Seventh Circuit held that given the finding that debtor's creditors were undersecured, the district court had no option other than to deem the reclaiming creditor's administrative claim worthless, suggesting that the Court could have granted the administrative claim if the creditor was oversecured. *See also In re Hartz Foods, Inc.,* 264 B.R. 33, 37 (Bankr.D.Minn.2001); *In re McLouth Steel Prods. Corp.,* 213 B.R. 978, 990; and Craig M. Geno and Meade W. Mitchell, *Basic Principles of Bankruptcy and State Reclamation,* 18 Miss.C.L.Rev. 433, 455–456 (1998). *But see Galey & Lord, Inc. v. Arley Corp. (In re Arlco, Inc.),* 239 B.R. 261 (Bankr.S.D.N.Y.1999) (where Court rejected the reclaiming seller's marshalling argument when the lien creditor was oversecured).

As the administration of the main case progressed, it became clear that Foothill would be paid in full. Thus, Foothill was an oversecured, not an undersecured, creditor. Ohio Valley appeared to argue that it was entitled to an administrative claim under § 546(c) because Foothill was oversecured. The debtor disagreed, arguing that even if Foothill were paid in full, Ohio Valley would not be entitled to a reclamation claim because Foothill's security interest covered the goods subject to the reclamation demand. The question then appeared to be whether the Court could grant an administrative claim to Ohio Valley under § 546(c)(2)(A) if Foothill was oversecured, even though the proceeds from the sale of the goods sought to be reclaimed by Ohio Valley ($43,753.15) were insufficient to pay Foothill's claim. In other words, if Foothill's secured claim was greater than the value of the reclaimed goods, but less than the value of all the debtor's assets subject to its security in-

terest, would Ohio Valley be entitled to an administrative claim? At a hearing on May 16, 2001, the trustee's counsel [6] suggested that these questions were "largely academic," and that this could be counsel's fault for not emphasizing the fact that there was a second secured creditor, State Street Bank.

In a brief filed on March 1, 2001, the trustee included the following argument regarding State Street, but only in a footnote on the tenth page of his brief:

> The Debtors are currently seeking relief from the lien of State Street Bank. However, even if the Debtors are successful in their action under 11 U.S.C. § 547, the lien does not disappear but is preserved for the benefit of the estate's creditors as a whole. 11 U.S.C. § 550(a). Therefore, the outcome of this litigation will not alter the Court's analysis of reclamation demands.

This rather understated argument seemed significant to the Court, since State Street asserts a secured claim which far exceeds the value of debtor's assets. Perhaps the parties had not focused on State Street's claim previously, because the trustee had filed a lawsuit seeking to set aside State Street's security interest as a preference. However, as the trustee suggested, if the trustee is successful in the preference action against State Street, State Street's lien would be preserved for the benefit of the estate's creditors. (In the footnote, the trustee cited § 550(a), but the preservation remedy is found in § 551 of the Bankruptcy Code.) At the May 16, 2001 hearing, the Court advised counsel that if this argument had merit, then the issue of whether the Court could grant Ohio Valley an administrative claim, since Foothill was an *oversecured* creditor, would seem to be

irrelevant. The Court asked the parties to submit additional stipulations and briefs regarding the status and effect of State Street's claim on this reclamation dispute. The parties filed stipulations on September 20, 2001, the trustee filed a brief on October 1, 2001, and Ohio Valley filed a short reply on November 5, 2001.

In the stipulations filed on September 20, 2001, the trustee and Ohio Valley stipulated that State Street, as indenture Trustee, holds secured claims which significantly exceed the value of debtor's remaining assets. Ohio Valley is not alleging that State Street acted in bad faith with regard to its lien or its conduct with respect to other creditors either pre-petition or post-petition. The trustee is prosecuting an adversary proceeding seeking to avoid State Street's lien as a preference under § 547.

Section 551 of the Bankruptcy Code provides as follows:

**Automatic preservation of avoided transfer**

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

Under § 551, avoided liens are preserved for the benefit of the estate, and the lien is preserved for the benefit of the estate's unsecured creditors. Thus, even if the trustee is successful in his preference action against State Street such that the lien is avoided and set aside, by virtue of § 551 of the Bankruptcy Code, the lien is preserved. If State Street's lien is preserved, then this reclamation dispute now involves a case where the reclaiming creditor takes subject to State Street's lien which the

6. At the debtor's request, a Chapter 11 Trustee was appointed in this case on February 26, 2001. Thus, from March 1, 2001, the argu-ments in opposition to Ohio Valley's claim were asserted on behalf of the Trustee.

parties agree is vastly undersecured and as to which there are no allegations of bad faith. Thus, the only issue to be decided is whether the Court can grant an administrative claim under § 546(c)(2)(A) when the claim is subject to the secured claim of an undersecured creditor, not an oversecured creditor.

The majority of cases hold that the Court cannot grant an administrative claim to a reclaiming seller when there is an undersecured floating lien on inventory. *In re Pester Ref. Co.*, 964 F.2d 842 (8th Cir.1992); *Bindley Western Ind. v. Reliable Drug Stores, Inc. (In re Reliable Drug Stores, Inc.)*, 181 B.R. 374 (S.D.Ind. 1995), *aff'd,* 70 F.3d 948 (7th Cir.1995); *Allegiance Healthcare Corp. v. Primary Health Sys., et al. (In re Primary Health Sys., Inc., et al.)*, 258 B.R. 111 (Bankr. D.Del.2001); *In re Victory Mkts., Inc. et al.*, 212 B.R. 738 (Bankr.N.D.N.Y.1997). Ohio Valley relies on the minority view expressed in *Isaly Klondike Co. v. Sunstate Dairy & Food Prods. Co., et al. (In re Sunstate Dairy & Food Prods. Co., et al.)*, 145 B.R. 341 (Bankr.M.D.Fla.1992). In *Sunstate,* Barclay's had a properly perfected security interest in all of the debtor's property. The debtor owed Barclay's over $10 million at the date of bankruptcy. Klondike delivered some $50,000 worth of ice cream bars while debtor was insolvent, five days before the bankruptcy was filed. Klondike sent a proper demand letter and then filed an adversary proceeding to gain possession of the ice cream or to obtain an administrative expense claim pursuant to § 546(c). The Court held that Klondike's right of reclamation was subject to Barclay's rights because Barclay qualified as a good faith purchaser. Nonetheless, the Court awarded Klondike an administrative claim, finding that the sale of the ice cream was used to fund the Chapter 11 and reduce the debt.

The recent case of *In re Primary Health Systems,* criticizes the analysis in *Sunstate* and discusses the better reasoning of the majority view which, contrary to *Sunstate,* holds that an administrative claim cannot be granted when the reclaiming creditor's claim is subject to an undersecured claim. *In re Primary Health Sys., Inc.,* 258 B.R. at 115. The analysis and criticism of *Sunstate* in *Primary Health Systems* is persuasive. Section 546(c) was not intended to grant any additional right to creditors. Under state law, a reclaiming creditor cannot reclaim its goods if the goods are not worth more than the value of a secured claim covering the goods, because the holder of the lien can assert its rights and is entitled to the inventory. Even if a seller has a right of reclamation, it has no right to an administrative claim in bankruptcy if its right of reclamation has no value outside of bankruptcy.

In conclusion, when the smoke clears, the reclamation claim of Ohio Valley is subject to the lien claims of *both* Foothill and State Street, even if State Street's lien is avoided by the trustee in the preference action. The majority view, and the view adopted by this Court, is that if (1) the secured claim covers the goods sought to be reclaimed; (2) the secured claim is for an amount greater than the value of the goods sought to be claimed; (3) the secured claim is also undersecured as to the remaining assets securing the claim; and (4) there are no allegations of bad faith, then the reclamation claim has no value, and the Court is unable to grant an administrative claim under § 546(c)(2)(A).

In accordance with the above reasoning, Ohio Valley's motion for an administrative expense claim is DENIED, but Ohio Val-

ley has a general unsecured claim in this case.