In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 18-3363

IN RE:

 HHGREGG, INC., et al.,

                 *Debtors.*

WHIRLPOOL CORPORATION,

            *Plaintiff-Appellant,*

        *v.*

WELLS FARGO BANK, NATIONAL ASSOCIATION,
and GACP FINANCE CO., LLC,

           *Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:17-cv-4662-WTL-TAB — **William T. Lawrence**, *Judge.*

_____

ARGUED SEPTEMBER 5, 2019 — DECIDED FEBRUARY 11, 2020

_____

Before SYKES, HAMILTON, and SCUDDER, *Circuit Judges.*

SYKES, *Circuit Judge.* This is an appeal from an adversary proceeding in a Chapter 11 bankruptcy and concerns a trade creditor's right to reclaim goods it sold to the debtor on the

eve of bankruptcy. The question is whether the seller's reclamation claim is superior to the claims of secured lenders—more specifically, the lenders that extended debtor-in-possession financing in exchange for a priming, first-priority floating lien on existing and after-acquired inventory.

The debtor is appliance retailer hhgregg, Inc.[1] Whirlpool Corporation, a longtime supplier, delivered appliances to hhgregg during the period just before the bankruptcy filing. Wells Fargo Bank, as administrative agent for several lenders, extended operating financing to hhgregg in the years leading up to the bankruptcy. Under the prepetition credit agreement, Wells Fargo's advances were secured by a first-priority floating lien on nearly all of hhgregg's assets, including existing and after-acquired inventory and its proceeds.

In the first 24 hours of the Chapter 11 proceeding, hhgregg sought the court's approval for $80 million in debtor-in-possession ("DIP") financing, with Wells Fargo now acting as administrative agent for a group of postpetition lenders. The DIP financing agreement authorized a "creeping roll-up" of the secured lenders' prepetition debt and gave Wells Fargo a priming, first-priority floating lien on substantially all of hhgregg's assets, including existing and after-acquired inventory and its proceeds. The bankruptcy judge approved the DIP financing that same day.

Three days later Whirlpool sent a reclamation demand to hhgregg seeking the return of appliances it had delivered in the 45-day period before the bankruptcy petition. Whirlpool

---

[1] The bankruptcy proceeding involves three related hhgregg companies. We refer to them collectively as "hhgregg."

later filed an adversary action against Wells Fargo seeking a declaration that its reclamation claim is first in priority as to the reclaimed goods. Wells Fargo moved to dismiss. The bankruptcy judge treated the motion as one for summary judgment and entered final judgment for Wells Fargo. The district court affirmed.

We likewise affirm. Reclamation is a limited in rem remedy that permits a seller to recover possession of goods delivered to an insolvent purchaser—subject, however, to significant temporal, procedural, and substantive restrictions. It is not the same as a purchase money security interest. The remedy appears in Article 2 of the Uniform Commercial Code—not Article 9—and is codified in the relevant state's version of U.C.C. § 2-702. Within bankruptcy a reclamation claim is governed by 11 U.S.C. § 546(c).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA" or "the 2005 amendments") made important changes to § 546(c). Before BAPCPA most bankruptcy courts applied a "prior lien defense" drawn from the U.C.C.'s substantive limitations on the reclamation remedy, subordinating the seller's reclamation claim to a secured lender's floating lien on the debtor's inventory. The 2005 amendments adopted that norm as a federal priority rule: under BAPCPA a seller's right to reclaim goods is "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof." § 546(c).

Wells Fargo, as agent for the postpetition lenders, holds a priming, first-priority lien on hhgregg's existing and after-acquired inventory and its proceeds under the DIP financing agreement, approved by the court in the first 24 hours of the Chapter 11 proceeding. By operation of § 546(c), Whirlpool's

later-in-time reclamation demand is "subject to" Wells Fargo's prior rights as a secured creditor, so its reclamation claim is subordinate to the DIP financing lien.

## I. Background

In March 2011 Wells Fargo, as administrative and collateral agent for a consortium of financial institutions, entered into a loan and security agreement with hhgregg to provide the retailer with operating credit. The security agreement gave Wells Fargo a first-priority, floating lien on nearly all of hhgregg's assets, including existing and after-acquired inventory and its proceeds. This security interest was valid, perfected, and enforceable, so Whirlpool's subsequent deliveries to hhgregg were made subject to Wells Fargo's lien.

On March 6, 2017, hhgregg petitioned for Chapter 11 bankruptcy in the Southern District of Indiana. As of the petition date, hhgregg owed Wells Fargo at least $66 million under the prepetition credit facility. That same day hhgregg entered into an agreement with Wells Fargo to obtain DIP financing. The agreement was similar in form and function to the prepetition credit facility. Wells Fargo, as agent for a group of postpetition lenders,[2] agreed to extend $80 million in DIP financing in return for a priming, first-priority security interest on substantially all of hhgregg's assets, including existing and after-acquired inventory and its proceeds.

---

[2] GACP Finance Co., LLC, as agent for certain first-in last-out lenders, is also a party to the DIP financing agreement and a defendant in this adversary action. Because the interests of the two financial institutions align and they have proceeded jointly on appeal, we refer to them together as "Wells Fargo."

DIP financing is crucial to a Chapter 11 debtor because it provides desperately needed operating cash during the reorganization bankruptcy process. But lending to a company in bankruptcy necessarily carries high risk, so a DIP lender requires special security. A bankruptcy judge may approve a debtor's grant of a senior lien to a DIP lender provided the judge determines that the debtor is unable to obtain other financing and the interests of preexisting lienholders will be adequately protected. *See* 11 U.S.C. § 364(d). Since postpetition financing is so valuable and difficult to obtain, a bankruptcy judge can authorize a debtor to grant a DIP lender a priming, first-priority lien—a lien that leapfrogs over preexisting liens to top priority. *Id.*

Early on March 7, hhgregg moved for interim approval of the March 6 DIP financing agreement. The bankruptcy judge granted the motion that same day. The judge's interim order implemented the March 6 DIP financing agreement and gave Wells Fargo a comprehensive, super-priority security interest in hhgregg's assets, subordinating its prepetition lien. More to the point here, Wells Fargo obtained a "priming first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected" lien on hhgregg's assets, including existing and after-acquired inventory and its proceeds. The lien was "effective immediately upon the entry of this Interim Order" and is "senior and superior in priority to all other secured and unsecured creditors." The DIP financing order also authorized a "creeping roll-up" of the prepetition lenders' secured debt.

Upon entry of the interim order, the DIP lenders immediately funded their $80 million loan obligations. On May 2,

following notice and hearings, the bankruptcy judge entered a final order approving the DIP financing.

Before the bankruptcy filing, Whirlpool delivered home appliances to hhgregg on credit for resale in its retail stores. On March 10, 2017—three days after entry of the interim order approving the DIP financing—Whirlpool sent a reclamation demand seeking the return of approximately $16.3 million of unpaid inventory delivered to hhgregg in the 45-day period before the petition date. Whirlpool later filed a limited objection to the interim DIP order alerting the court to its reclamation demand and citing § 546(c). Meanwhile, the reorganization plan called for hhgregg to sell existing inventory—including the Whirlpool reclaimed goods—and apply the proceeds to the prepetition debt owed to Wells Fargo.

In April Whirlpool filed an adversary complaint against hhgregg and Wells Fargo seeking a declaration that its reclamation claim was first in priority as to the reclaimed goods. Among other things, the complaint alleged that Wells Fargo had not acted in good faith because it knew hhgregg was insolvent and yet continued to provide financing, allowing hhgregg to acquire additional inventory from suppliers like Whirlpool in order to expand Wells Fargo's own collateral base.

Events in the bankruptcy unfolded quickly. Reorganization proved unsuccessful, and on April 7, May 10, and May 17, the bankruptcy judge entered orders authorizing hhgregg to sell its inventory—including the Whirlpool goods—in going-out-of-business sales. Whirlpool objected to the sale of the reclaimed goods. To facilitate the proposed liquidation, the judge's April 7 sale order reserved

Whirlpool's reclamation claim, which was "deemed to attach to any proceeds of Whirlpool Goods" but "with the same validity, defects and priority, and/or lack of any of the foregoing" as before the order. By the time of the court's May 2 final approval of the DIP financing, the prepetition secured debt was paid in full pursuant to the "final roll-up" specified in the interim DIP financing order, extinguishing Wells Fargo's prepetition lien.

On May 18 Wells Fargo moved to dismiss Whirlpool's adversary complaint, relying in part on the contents of the final DIP financing order. The bankruptcy judge was uncertain about the extent to which he could take judicial notice of factual material contained within his prior orders, so he treated Wells Fargo's motion as one for summary judgment and gave the parties an opportunity to supplement their submissions as required by Rule 12(d) of the Federal Rules of Civil Procedure (incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure). Hhgregg, for its part, answered Whirlpool's complaint and asserted counterclaims.

After reviewing the supplemental submissions, the judge entered summary judgment for Wells Fargo. He began by tracing the interplay between U.C.C. § 2-702, which governs reclamation claims outside bankruptcy, and 11 U.S.C. § 546(c), which governs reclamation claims within bankruptcy. Under section 2-702 a seller's right to reclaim goods delivered to an insolvent purchaser has strict temporal and procedural requirements and as a substantive matter is "subject to the rights of a buyer in ordinary course or other good faith purchaser." U.C.C. § 2-702(3) (AM. LAW INST. & UNIF. LAW COMM'N 1966); IND. CODE § 26-1-2-702(3) (as

adopted in Indiana). The judge noted that "[m]any [bank-ruptcy] courts have treated the holder of a prior perfected, floating lien on inventory as a 'good faith purchaser' for purposes of [section] 2-702(3), largely relying on the defini-tion[s] of 'purchase' and 'purchaser'" in the U.C.C. *In re hhgregg, Inc.*, 578 B.R. 814, 818 (Bankr. S.D. Ind. 2017) (citing *In re Arlco, Inc.*, 239 B.R. 261, 267–68 (Bankr. S.D.N.Y. 1999) (collecting cases)).

As the judge explained, the 2005 amendments to the Bankruptcy Code made that type of analysis obsolete: the revised § 546(c) expressly makes a seller's reclamation right "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof." The judge reasoned that "[a]s amended [in 2005], § 546(c) explicitly renders an otherwise valid reclamation claim under state law subordi-nate to a secured creditor's prior lien rights—without refer-ence or resort to the [U.C.C.] to ascertain whether the secured creditor is a good faith purchaser." *Id.* at 819.

Applying this understanding, the judge held that Wells Fargo's "lien chain … remains unbroken and prior to Whirlpool's reclamation demand." *Id.* at 820. Before and on the March 6 petition date, Wells Fargo held a first-priority, perfected floating lien on hhgregg's assets pursuant to the prepetition credit facility. By the terms of the court's March 7 DIP financing order, Wells Fargo obtained a priming, first-priority, perfected lien on hhgregg's assets, effective imme-diately. *Id.* So "[w]hen Whirlpool made its reclamation demand[,] the Whirlpool Goods were encumbered by the DIP Lenders' and Wells Fargo's prior interests." *Id.* Because a reclamation demand is "subject to" the prior rights of secured creditors under the express terms of § 546(c), the

judge subordinated Whirlpool's claim to Wells Fargo's DIP financing lien. *Id.*

The claims and counterclaims between Whirlpool and hhgregg remained, but the judge found no just reason for delay and entered final judgment for Wells Fargo, authorizing Whirlpool to take an immediate appeal to the district court. The district judge affirmed, largely adopting the bankruptcy judge's reasoning.

## II. Discussion

Whirlpool asks us to hold that its reclamation claim is first in priority as to the reclaimed goods, ahead of Wells Fargo's DIP financing lien. Alternatively, Whirlpool seeks a remand to establish that Wells Fargo did not act in good faith and thus does not have prior rights as a good-faith purchaser under Indiana's version of U.C.C. § 2-702. (Recall that the bankruptcy judge did not address this question, holding instead that a "good-faith purchaser" inquiry under the U.C.C. is unnecessary in light of the 2005 amendments to § 546(c).)

First, a few words about the standard of review. A summary judgment in a bankruptcy adversary proceeding is treated as any other summary judgment, so our review is de novo. *Doe v. Archdiocese of Milwaukee*, 772 F.3d 437, 440 (7th Cir. 2014). Wells Fargo argues for the more deferential clear-error standard, drawing an analogy to a strand in our circuit caselaw involving summary judgments in cases raising ERISA claims. Briefly stated, because ERISA authorizes equitable relief and there is no right to a jury trial, we've held that when a district court resolves the claim on summary judgment and the only issue is the characterization of

the undisputed subsidiary facts, the judge's ruling is best understood as presenting a mixed question of law and fact and reviewed for clear error. *See, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. Nagy*, 714 F.3d 545, 549–50 (7th Cir. 2013); *see also French v. Wachovia Bank, N.A.*, 722 F.3d 1079, 1084–85 (7th Cir. 2013) (explaining our practice in the ERISA context but declining to extend it to a case involving a summary judgment in a common-law claim for breach of fiduciary duty).

That reasoning does not apply here. Although the material facts are undisputed, we're not reviewing the bankruptcy court's characterization of the facts. Rather, the appeal presents a legal issue regarding the operation of the 2005 amendments to § 546(c). We see no reason to treat the bankruptcy judge's order any differently than an ordinary summary judgment. Our review is plenary, though we benefit from the work of the bankruptcy and district judges.

We begin with some background on the right of reclamation both outside and within bankruptcy.

## A. Reclamation Outside Bankruptcy

Reclamation is a limited in rem remedy that permits a seller to regain possession of goods delivered to an insolvent purchaser on credit. *See In re Pester Ref. Co.*, 964 F.2d 842, 844 (8th Cir. 1992); *In re Circuit City Stores, Inc.*, 441 B.R. 496, 510–11 (Bankr. E.D. Va. 2010); *In re Dana Corp.*, 367 B.R. 409, 419 (Bankr. S.D.N.Y. 2007). "It is a rescissional remedy, based upon the theory that the seller has been defrauded. Indeed, at common law and under the Uniform Sales Act, the seller could only reclaim goods by proving that the buyer fraudu-

lently induced delivery by misrepresenting its solvency." *In re Pester*, 964 F.2d at 844.

The Uniform Commercial Code codified the remedy in a different form, removing the requirement to prove fraudulent inducement—but only for a small set of time-limited claims. Under section 2-702(2), a credit seller may reclaim goods delivered to an insolvent buyer *provided* a demand for reclamation is made within ten days of the buyer's receipt of the goods; if the buyer made a written misrepresentation of solvency in the three months before delivery, the ten-day limit does not apply. In addition to these temporal and procedural qualifiers, the U.C.C. remedy is substantively limited: a seller's reclamation right is subject to the rights of buyers in the ordinary course and other good-faith purchasers. U.C.C. § 2-702(3).

Here is the relevant text of the U.C.C. reclamation remedy:

> Seller's Remedies on Discovery of Buyer's Insolvency
>
> …
>
> (2) Where the seller discovers that the buyer has received goods on credit while insolvent[,] he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery[,] the ten day limitation does not apply. …
>
> (3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in or-

dinary course or other good faith purchas-
er … .

U.C.C. § 2-702. The corresponding provision in Indiana is identical. IND. CODE § 26-1-2-702.

The commentary to section 2-702 explains that the remedy

takes as its base line the proposition that any receipt of goods on credit by an insolvent buy-er amounts to a tacit business misrepresenta-tion of solvency and therefore is fraudulent as against the particular seller. This Article makes discovery of the buyer's insolvency and de-mand within a ten day period a condition of the right to reclaim goods on this ground.

U.C.C. § 2-702 cmt. 2.

## B. Reclamation Within Bankruptcy

Within bankruptcy, reclamation has a checkered history. Prior to the Bankruptcy Reform Act of 1978, it was unclear whether the trustee could use his various strong-arm powers against a trade creditor's section 2-702 reclamation claim. *See* 5 COLLIER ON BANKRUPTCY ("COLLIER") ¶ 546.LH[3] (16th ed.); Lawrence Ponoroff, *Reclaim This! Getting Credit Seller Rights in Bankruptcy Right*, 48 U. RICH. L. REV. 733, 739–46 (2014). In response, the 1978 Act added a new subpart to 11 U.S.C. § 546, the section of the Bankruptcy Code that sets limits on the trustee's avoidance powers.

Because the Code's reclamation provision is stated as a limitation on the trustee's powers, the language is a bit clunky; we paraphrase here. As originally adopted, § 546(c)

declared that the trustee's rights and powers under § 544(a) (the strong-arm provision), § 545 (statutory liens), § 547 (preferences), and § 549 (postpetition transactions) were "subject to any statutory right or common-law right of a seller … of goods … to reclaim such goods if the debtor has received such goods while insolvent" *provided* the seller made written demand for reclamation within "ten days after receipt of such goods by the debtor." Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 546(c)(1), 92 Stat. 2549, 2597.

In its original form, § 546(c) preserved the bankruptcy court's flexibility to facilitate reorganization by authorizing a substitute remedy: the court could deny an otherwise valid reclamation demand (thus leaving the goods in the estate) if it granted the seller an administrative expense claim (these are governed by 11 U.S.C. § 503(b)) or secured the claim with a lien. *Id.* § 546(c)(2); *see also* COLLIER ¶ 546.LH[3]. A later amendment to § 546(c) extended the deadline for written notice to 20 days if the ten-day period expired after com-mencement of the bankruptcy case. Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 209, 108 Stat. 4106, 4125; *see also* COLLIER ¶ 546.LH[3].

Before BAPCPA, bankruptcy courts struggled to resolve conflicts between claims of reclaiming sellers under § 546(c) and claims of secured lenders holding floating liens on the debtor's inventory. As originally enacted § 546(c) did not address the effect of a prior lien on the rights of a reclaiming seller. So judges looked to state-law rules—specifically, the relevant state's version of section 2-702. As we've explained, under section 2-702(3) the right of a seller to reclaim goods is "subject to the rights of a buyer in ordinary course or other

good faith purchaser." A "purchaser" is "a person that takes by purchase," U.C.C. § 1-201(b)(30) (AM. LAW INST. & UNIF. LAW COMM'N 2001), and "purchase" means "taking by sale, lease, discount, negotiation, mortgage, pledge, *lien*, *security interest*, issue or reissue, gift, or any other voluntary transaction creating an interest in property," *id.* § 1-201(b)(29) (emphasis added).

Extrapolating from these broad definitions, the prevailing view was that "[s]ince most secured creditors are good faith purchasers under the [U.C.C.]," section 2-702(3) "has the effect, in priority terms, of placing the reclaiming seller behind the insolvent buyer's secured creditors who have security interests in the goods, but ahead of the buyer's unsecured creditors." *In re Pester*, 964 F.2d at 845; *see generally* Charles J. Shaw & Brent Weisenberg, *Effect of a Preexisting Security Interest in the Debtor's Inventory on the Rights of Reclamation Creditors*, 2005 NORTON ANN. SURV. OF BANKR. L. 15 (collecting pre-BAPCPA cases). We noted this trend in the caselaw more than two decades ago but did not weigh in. *In re Reliable Drug Stores, Inc.*, 70 F.3d 948, 949–50 (7th Cir. 1995). In *Reliable Drug Stores* the seller conceded that "a reclamation claimant stands in line after a creditor with a security interest in after-acquired inventory." *Id.* at 950.

Congress addressed this issue in 2005 when it enacted BAPCPA, which substantially reworked § 546(c). The statutory language is still clunky—more so in fact. For completeness we include the relevant text in full:

> (c)(1) … *subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof,* the rights and powers of the trustee under sections 544(a), 545, 547, and 549 are sub-

ject to the right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, within 45 days before the date of the commencement of a case under this title, but such seller may not reclaim such goods unless such seller demands in writing reclamation of such goods—

(A) not later than 45 days after the date of receipt of such goods by the debtor; or

(B) not later than 20 days after the date of commencement of the case, if the 45-day period expires after the commencement of the case.

(2) If a seller of goods fails to provide notice in the manner described in paragraph (1), the seller still may assert the rights contained in section 503(b)(9).

§ 546(c) (emphasis added).

Among other key modifications to the statute, the 2005 amendments (1) omitted the prior version's reference to statutory or common-law reclamation rights; (2) enlarged the reclamation look-back period from 10 to 45 days; (3) set a hard deadline to serve a written reclamation demand at 20 days after the petition date; and (4) added new language making explicit that a seller's right to reclaim goods is "subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof." *Id.* One more notable change: the substitute remedies in the earlier version of the

statute—an administrative expense claim or a lien—are gone. Instead, subsection (c)(2) cross-references to a new § 503(b)(9), another BAPCPA innovation.

Section 503(b) of the Code lists the allowable administrative expenses that ordinarily enjoy priority in bankruptcy over other unsecured claims; generally speaking, these are costs incurred in the preservation and administration of the estate. The 2005 amendments added a new subsection (b)(9), which lists as an allowable administrative expense "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." So by operation of the cross-reference in § 546(c)(2), a reclaiming seller might have an administrative expense claim for the value of goods delivered to the debtor on days 1–20 before the start of the bankruptcy case *even if* the seller fails to serve a timely written reclamation demand and thus forfeits a claim to recover goods delivered during the 45-day look-back period under § 546(c)(1).

Section 503(b)(9) raises its own set of interpretive and application issues, but this appeal doesn't require us to address them. The only question here is whether Whirlpool's reclamation claim is subordinate to Wells Fargo's DIP financing lien. It is, for reasons we'll turn to now.

## C.  BAPCPA's § 546(c) Created a Federal Priority Rule

As we've just explained, one of BAPCPA's key changes to § 546(c) was the adoption of a federal priority rule for resolving disputes between reclaiming sellers and secured lenders over the same goods. To the extent that priority was

uncertain under the old version of § 546(c), after the 2005 amendments, it's crystal clear that a seller's reclamation claim is subordinate to "the prior rights of a holder of a security interest." § 546(c)(1). What this means as a practical matter is that "if the value of any given reclaiming supplier's goods does not exceed the amount of debt secured by the prior lien, that reclamation claim is valueless." *In re Dana Corp.*, 367 B.R. at 419; *see also In re Reliable Drug Stores*, 70 F.3d at 950 (explaining in a case governed by the pre-BAPCPA statute that if the debtor's secured lenders are undersecured, the court "ha[s] no option other than to deem [the reclaiming seller's] administrative claim worthless").

Here, under the terms of the March 6 DIP financing agreement and effective upon entry of the court's March 7 interim DIP financing order, Wells Fargo obtained a priming, first-priority security interest in all hhgregg assets, including the Whirlpool inventory. Whirlpool's reclamation demand came later, on March 10, and is therefore "subject to" Wells Fargo's prior rights as the holder of a perfected, first-priority security interest in the reclaimed goods.

Whirlpool counters that its reclamation claim was "in effect" as of the March 6 petition date (even though demand was not made until March 10) and "jumped into first position" during a "gap in the lien chain" that occurred between March 6, when Wells Fargo's prepetition security interest was concededly superior, and March 7, when Wells Fargo's postpetition security interest attached pursuant to the court's DIP financing order. Whirlpool insists that its reclamation claim jumped ahead of Wells Fargo's DIP financing lien when the prepetition lien was extinguished in the final roll-up of the collateralized prepetition debt.

There are at least two problems with this argument. First, a reclamation right is not a security interest; nor is the reclamation remedy self-executing, either within or outside bankruptcy. *See In re Circuit City Stores*, 441 B.R. at 505 (collecting cases). Absent a timely written demand, the seller has no reclamation right under § 546(c)(1). Even under the U.C.C., the right of reclamation is conditioned on a timely demand, though it need not be in writing. U.C.C. § 2-702(2). Whirlpool served its written reclamation demand on March 10, three days *after* Wells Fargo's postpetition lien attached by order of the bankruptcy court. There is no support for Whirlpool's assertion that its reclamation claim was actually "in effect" on the petition date, four days *before* demand was made.

Second, there was no gap in the Wells Fargo lien chain. Before and as of the March 6 petition date, Wells Fargo held a first-priority, perfected lien on hhgregg's assets, including the Whirlpool inventory. Effective March 7 Wells Fargo obtained a court-approved, priming, first-priority, perfected lien on hhgregg's assets, including the Whirlpool inventory. As the bankruptcy judge explained, the Whirlpool goods were continuously encumbered by one or both of Wells Fargo's liens. Whirlpool's reclamation claim did not spring into first position when Wells Fargo's prepetition lien was extinguished in the final roll-up. The lien chain remained unbroken.

Whirlpool's fallback argument is that the prior rights of a secured creditor must be determined by reference to state law—here, Indiana's version of U.C.C. § 2-702, which (like the uniform law) states that a seller's right to reclaim goods is "subject to the rights of a buyer in ordinary course or other

good faith purchaser." IND. CODE § 26-1-2-702. Whirlpool insists that Wells Fargo cannot be considered a good-faith purchaser based on its conduct as agent for the DIP lenders and seeks a remand for an opportunity to litigate that question.

Whatever force this argument might have had under the old version of § 546(c), with the 2005 amendments, the rationale for examining the lienholder's status as a good-faith purchaser has evaporated. The post-BAPCPA text of § 546(c) *expressly* subordinates a seller's reclamation claim to the prior rights of a lienholder; there is neither need nor any reason to import a state-law good-faith purchaser inquiry. The bankruptcy judge therefore correctly concluded that Whirlpool's allegations of bad faith are irrelevant to the priority determination under § 546(c).

When Whirlpool made its reclamation demand on March 10, the reclaimed goods were subject to Wells Fargo's prepetition *and* DIP financing liens. While the prepetition lien was later lifted, the reclaimed goods remained subject to Wells Fargo's DIP financing lien. The bankruptcy judge correctly subordinated Whirlpool's reclamation claim to the DIP financing lien.

AFFIRMED